Judge Mills
delivered the opinion of the Court on the petition for the rehearing.
In pursuance of the petition for a rehearing, we have revewed the former opinion in these appeals, as well as re-examined the extraordinary and confused record, and do not feel willing to retract a single principle before advanced. The opinion, it is true, is written with a “running pen,” and indeed, necessarily so, lest the long detail of facts necessary to be recited, when added to a lengthy discussion of the principles involved, should swell the opinion to an extraordinary length.
-Our attention is again invited to the main points, to-wit; the jurisdiction of a court of equity over the bill, and the lien claimed by Blanks upon the land. It is true that bills to make legal titles which are valid against all the world, except two description of persons, recorded titles, and thus to protect them from creditors and innocent purchasers, have not been frequent. But if such bills cannot be allowed under one state of conveyances, it must certainly be said that there is a defect of justice in our *221 country. A court of common law can give no relief in such a case, and if equity cannot do it, then is the case a hopeless one.
auufileTde feotive in for-mslitios, sup-kjgal Titles'* where the ’ evidence cannot bo adduced in the court",°0° take jurisdiction, merely to tiTiTitvof” suits, or clear an entangled
it is no de-fence for the Cajnst The" bill of the re-mute alienee, Brought for a £o recorded* that he had’ not r-ceived ™LraiJc1hL?<L it appears he had taken attitude of .gives the party in such case 110 acl" Vdn ag
If, however, the principles which govern courts of equity are examined, it will be found that there are many circumstances in this case, independent of defective conveyances, which sustains the jurisdiction, Courts of equity will aid titles defective in the formalities of law, supply deficiencies, and even enforce legal titles, where the evidence cannot be got at, in a court of law, and even where it can, if many suits can be prevented, or where the title is much entangled, equity will entertain jurisdiction of the matter. If these and other principles of the jurisdiction of courts of equity are scrutinized, and this record is examined, the mind must be sceptical, which still contests the jurisdiction.
As to the lien claimed by Banks, it is still less tenable. He had personal security, and the present holder of the legal estate is an innocent purchaser, Liens of this nature do not follow unregistered more than registered conveyances; and why must he have his lien, when he is not asked for a title, hut to furnish those who claim under him with a recorded deed? Barely it is said, because he is a defendant. If he be a defendant must he be per-mised to do iniquity, before he does equity. A sells to B a tract of land, and conveys it by an uure-corded deed, but takes personal security for the price. B sells to C. who is ignorant that any thing is due to A, and also conveys by an unrecorded deed; C loses both deeds, and comes into a court of equity, to be relieved from the accident; A refuses relief till he shall pay him the.price of the land; not on the ground that he has any right to it in law or conscience lrom O, but because he is a cieiendant, and C, because he is complainant, must suffer gross injustice; must with his deeds lose the price of the land. To state such a proposition refutes it.
It is insisted that we ought not to bind Banks by the agreement of Lewis to read depositions admited by Lewis, because the written agreement of Lewis is not proved, and this is insisted upon, because *222 the cause under the agreement of the parties, is to be tried here as it would have been in the court below. We might almost as well be told that we ought not to admit bills or answers, unless they were first proven to be genuine. If the parties have supposed that this consent could give original jurisdiction to this court, they were mistaken. A written agreement touching the management of the cause, filed by the parties and signed by themselves or counsel, where the court below knows the band Writing, or can bring the parties before it, are read as much in causes as the pleadings, and if it is to be questioned here, and the original papers are to be brought up, and their genuineness to be here proved for the first time, by living witnesses or new depositions, then we would be converting this court into one of original jurisdiction, and we disavow such a power. We conceive the depositions are admissible under tills agreement, and that both Lewis’ representatives as well as Banks, under his agreement with Lewis, are bound by them, and the agreement was not questioned below.
An agreement of parties filed in the circuit court touching the management of a cause, and there used, regarded and given effect here.
It is not necessary in a bill by a remote alienee of the paten-tee, for a renewed deed, to be registered, that all the intermediate grantors and grantees be parties, if their deeds he proved.
But various objections are taken to the orders of publication, as not authorizing the bill to be taken as confessed against absent defendants, and that without the confession, many of the intermediate conveyances cannot be read against Lewis or Banks, it is true the opinion is expressed that the silence of the absent defendants, or their tacit confession might be used against Lewis and Banks, so far as they had no interest affected by the confession, and so we still suppose. But on a more critical examination of the record and the decree rendered, it will be found not necessary to resort to this principle, except with regard to one single conveyance. It. ought to be recollected that these absent defendants are not complaining, nor are they appellants, but it is Lewis’ devisees and Bardes who complain for them. As the whole of the conveyances, to be used from these absent defendants, pass the legal estate, and the objection is, that they are not recorded, it is not necessary that these absentees should be before the court, except to have the benefit of their confession, or to procure renewed conveyances from them, if *223 the complainant should choose to proceed against them for that purpose. But if the proof shews that these conveyances, to and from these absentees, were executed, they cannot be necessary parties before relief can be obtained against Lewis and Banks. One objection is, that the confession obtained by the complainant, is by order of publication against unknown heirs, when there was no affidavit made by the complainant, but only by his ottorney or agent, to obtain these orders. We will see how many of these unknown heirs were necessary parties.
Deeds of the intermediate parties, how proved &c.
In the first place the unknown heirs of De Lome-rie are in this publication. They were unnecessary, because Blight has a conveyance from De Lomerie, recorded in due form of law, and the conveyance to De Lomerie from Banks and Claiborne is admitted.
The unknown heirs of Richard Claiborne are next. They are also unnecessary, because Claiborne, after his conveyances to De Lomerie and Trenchard, conveyed the whole tract to Banks, by deed duly acknowledged and recorded in the Bards-town District Court, within eighteen months after its sealing and delivery, which was in due time, and places Banks in the room of both himself and Claiborne. This conveyance was not noticed in the original opinion, as not supposed necessary; but it leaves the complainant in a situation to omit him as a necessary party. .Trenchard, David Allison and Burges Allison are next, whose heirs are called upon as unknown. These conveyances as stated in the original opinion as admitted. Shannon remains as to David Allison’s share of the title, and his unknown heirs are among the number. The conveyances from David Allison to him, and from him to Bryan, Lyle and Fries, are both satisfactorily prow ed, and as to Bryan, Lyle and Fries they have conveyed to Blight by deed duly recorded., and they were, therefore, unnecessary parties.
Ewing, Jones and Keighan age the remaining decedents, whose unknown heirs are involved. By examining the conveyances from Ewing and Jones to Keighan; from Keighan back to them; from *224 Ewing to Jones, and from Jones to Blight, it will be found that they were all acknowledged before the Mayor of Philadelphia, and recorded in the general court of this State, within the time prescribed by law, and there was no need of bringing either them or their heirs before the court.
Certificates of publication of orders against absent defendants, ivliat certainty required.
Editors, whether the printers fr not may make such certificates — See the statement of the facts, in the petition, page 218, and the reed'd of the pase.
Want of an affidavit of the complainant, that he does not know the names of the persons sued as unknown heirs is error, —such affidavit can be made by none but complainant, unless it appear why he could not make it: —query, as' •to what would excuse him.
*224 The only remaining conveyance, is that from Compton, Tilghman and Hopkins to Ewing and Jones, the genuineness of which is not proved, and which is recorded properly, except as to the time, and the execution of it must, therefore, rest on tlieir confession by their not appearing. They are living defendants, and against them publication has been made.
The affidavit that the publication has been made, has been objected to, because it was made after the appearance day, and one of the nine insertions in the paper proved by it, might have been after the day of appearance.
If this affidavit is wholly disregarded, a minute examination of the record will disclose, that there is other proof of this publication, made by the editor of the paper, that the order was properly inserted. This permits the complainants to avail themselves of this conveyance.
But on re-examing these orders of publication, as to the unknown heirs of Trenchard, Barrett, Serv-antes and Barbour, for the purpose of setting aside the leases and contracts between Trenchard, on one side, and Barrett, Servantes and Barbour on the other, (a branch of the case with which Banks or Lewis has no concern) we conceive that the order is insufficient, because there was no affidavit of the party to warrant it, and no reason shown why he was incapable of making such affidavit. It follows therefore, that the complainants below, will not be entitled to such decree against these unknown defendants, on the return of the cause, as the original opinion directs, until these parties are brought be-' fore the court by p Co per publication or process, if the complainants shall see proper to proceed against thenr.
Decree by consent, held to be a decree between only the parties who had appeared, excluding the absent defendants.
Correction of the mandate,
Talbott and Darby, for Blight’s hiers; Haggin and ¿Mayes, for Banks; Monroe, for Lewis’ executors.
Upon a further examination of the decree .brought before us for revi.son, we conceive it did not dispose of the cause finally, as to those absent defendants, although the cause came on to be heard as to them. The decree that was rendered, was by consent, and it was agreed that that consent should not prejudice the rights of the parties'on an appeal. As the absent defendants were not there to assent, and all that was done was by consent, nothing is done yet as to them.
Their cases, therefore, or as many of them as the complainants may see cause to proceed against, for releases or other relief, are left under the power and direction of the court below.
So much, therefore, of the first opinion as conflicts with this, is set aside, and the former decree and mandate of this court, is to be so amended, as to direct only Banks and Lewis’s executors to convey the land as in the first decree is directed. The residue of the petition is overruled.